# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ESTATE OF WANDA LORRAINE KELLY JOHNSON, ARI SIMONE FOSTER, individually, and as heir and personal representative of the Estate of Wanda Lorraine Kelly Johnson, ESTATE OF ETHELEAN KING KELLY, ESTATE OF CLARENCE KELLY, JR., SARAH DENISE KELLY, individually, and as heir and personal representative of the Estates of Ethelean King Kelly and of Clarence Kelly, Jr., ANDRA LAMAR KELLY, and DEMARCO LASHAWN KELLY | Civil Action No. 23-1689 |
| Plaintiffs, | |
| v. | |
| THE ISLAMIC REPUBLIC OF IRAN, The Ministry of Foreign Affairs Imam Khomeini Square Imam Khomeini Street Tehran, Iran | |
| Defendant. | |

## **COMPLAINT**

Plaintiffs bring this case against Defendant, the Islamic Republic of Iran ("Iran"), pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. Section 1605A and applicable state and common law for damages arising out of the June 25, 1996 terrorist attack on the Khobar Towers complex in Dhahran, Saudi Arabia. On that day, Hizballah terrorists, with the material support of Defendant, the Islamic Republic of Iran ("Iran"), detonated a 5,000-pound truck bomb outside the complex, which housed United States military personnel. The blast killed nineteen American service members and injured many others.

Plaintiffs are the estate and survivors of Wanda Kelly Johnson, who was an air force sergeant injured in the Khobar Towers bombing. Plaintiffs seek a judgment against Iran for compensatory damages, punitive damages, attorney's fees, and costs. Plaintiffs allege as follows:

## I.     JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter and over Defendants pursuant to 28 U.S.C. Sections 1330-1332 and 1605A.

2. Defendant Iran is subject to suit in the courts of the United States as a sponsor of the terrorist group Hezbollah pursuant to the Foreign Sovereign Immunities Act, as amended, 28 U.S.C. § 1605A(a), and related statutes, including Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. § 2405(j), Section 40 of the Arms Export Control Act (22 U.S.C. § 2780), and Section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. § 2371), which designated Iran as a state sponsor of terrorism

3. This District is the proper venue pursuant to 28 U.S.C. Section 1391(f)(4).

## II.    THE PARTIES

4. Wanda Lorraine Kelly Johnson was, at all relevant times, a United States national. In 1996, she was serving a tour of duty at the U.S. Air Force base in Dhahran, Saudi Arabia. On June 25, 1996 Ms. Johnson was housed at the Khobar Towers complex. When the terrorists' truck bomb exploded, she was inside the residential quarters. Wanda was rocked by the blast, and, fearing for her life, she jumped, shoeless, out of a window, injuring her feet upon landing. She also suffered injuries to her shoulders and back, and lacerations from broken glass.

5. In the days immediately following the attack, Wanda was assigned to "Mortuary Affairs," where she was required to process the bodies of the deceased victims and to contact families of the deceased and severely injured. This experience was traumatic for Wanda.

6. As a direct result the attack Wanda Johnson suffered physical injuries and severe emotional injuries, including post-traumatic stress disorder ("PTSD"), bipolar disorder, depression, anxiety, and schizophrenia.

7. In 2021 Wanda died at age 59 as a result of her chronic alcohol abuse.

8. The Estate of Wanda Johnson is a plaintiff in this action.

9. The remaining Plaintiffs are the immediate family members, and the estates of immediate family members of Wanda Johnson, each of whom suffered severe emotional distress as a direct result of the bombing attack and the effects of Wanda's PTSD, bipolar disorder, depression, anxiety, schizophrenia, and alcohol abuse.

10. Wanda's daughter, Ari Simone Foster is, and was at all relevant times, a United States national. She is the only child of Wanda Johnson, is also the personal representative of the Estate of Wanda Johnson.

11. Wanda's Mother, Ethelean King Kelly was, at all relevant times, a United States national. Ethelean died in 2021. The Estate of Ethelene Kelly is a Plaintiff herein.

12. Wanda's father Clarence Kelly, Jr. was, at all relevant times, a United States national. Clarence Kelly Jr. died in 2000. The Estate of Clarence Kelly Jr. is a Plaintiff herein.

13. Wanda's brother, Plaintiff, Andra Lamar Kelly, is, and at all relevant times was, a United States national.

14. Wanda's sister, Plaintiff, Sarah Denise Kelly is, and at all relevant times was, a United States national. Sarah Denise Kelly is the personal representative of the estates of Ethelean King Kelly and of Clarence Kelly Jr.

15. Wanda's brother, Plaintiff, Demarco Lashawn Kelly, is, and at all relevant times was, a United States national.

16. Defendant the Islamic Republic of Iran (hereinafter also referred to as "Iran"), is a foreign state that, since January 19, 1984, has been designated a state sponsor of international terrorism within the meaning of section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)), section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371) and section 40 of the Arms Export Control Act, 22 U.S.C. § 2780.

17. The Islamic Republic of Iran provides material support and resources to Hizballah, a United States government designated Foreign Terrorist Organization ("FTO"). At all times relevant hereto, and in particular, in the time preceding and during the bombing attack, Iran provided Hizballah with funding, direction, and training for its terrorist activities.

18. Iran conspired with, and aided and abetted Hizballah in carrying out the terrorist attack on the Khobar Towers. Specifically, Iran, through its agents, including those in the Iranian Ministry of Information and Security (MOIS), and Iranian Islamic Revolutionary Guard Corp (IRGC), participated in the planning of the attack, and provided material support and resources. Iran provided money, training and travel documents to Hizballah members to facilitate the attack.

19. The Islamic Republic of Iran has been found to be liable as a foreign state supporting international terrorism under the predecessor statute to 28 USC Section 1605A, 28 U.S.C. § 1605(a)(7), to victims of state sponsored terrorism for the acts of defendant Hizballah in cases before this Court. *See e.g.*, *Anderson v. The Islamic Republic of Iran*, 90 F. Supp. 2d 107 (D.D.C. 2000) and *Cicippio v. The Islamic Republic of Iran*, 18 F. Supp. 2d 62 (D.D.C. 1998). Iran has also been found liable for the same bombing attack at issue here. *See e.g.*, *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006). *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163 (D.D.C. 2010); *Aceto v. Islamic Republic of Iran*, 2020 WL 619925 (D.D.C. 2020).

20. Iran is collaterally estopped in this action from denying that it is liable for the acts and actions of Hizballah in carrying out the terrorist attack at issue here.

21. Iran sometimes acted through its political subdivision and instrumentality the Iranian Islamic Revolutionary Guard Corps, (hereinafter referred to as "IRGC"), a branch of the Islamic Republic of Iran. The IRGC is one of the most powerful organizations in Iran, functioning as an intelligence organization, both within and outside the country of Iran and exerting considerable influence on the governmental policies of Iran. The IRGC has become a powerful military instrument for Iran and the Islamic fundamentalist revolution and employs terrorism to export of Islamic fundamentalism throughout the world.

22. The IRGC is the arm through which Iran prepared and oversaw the actions relating to the bomb attack on the Khobar Towers. The IRGC, as an agent and political arm of the Islamic Republic of Iran, performed acts within the scope of its agency, each within the meaning of 28 U.S.C. § 1605A, as a conduit for the Islamic Republic of Iran's provision of funds, training and direction to defendant Hizballah for its terrorist activities in Saudi Arabia that caused the injuries to plaintiffs herein. The IRGC has been found to be liable as a foreign state supporting international terrorism under former 28 U.S.C. § 1605(a)(7) to victims of state sponsored terrorism for the acts and actions of defendant Hizballah. *See e.g. Higgins v. The Islamic Republic of Iran*, Civ. No. 99-377(RCL) (D.D.C. Sept. 21, 2000); *Surette v. Islamic Republic of Iran*, Case No. 01-570 (D.D.C. November 1, 2002). Moreover, the IRGC has been found liable for the same terrorist attack at issue here. *See e.g, Estate of Heiser*, 466 F. Supp. 2d 229; *Aceto v. Islamic Republic of Iran*, 2020 WL 619925 (D.D.C. 2020),

23. Hizballah was formed by Iran utilizing IRGC assets to export Islamic fundamentalism throughout the world through acts of terrorism, including, but not limited to, the

actions relating to the June 25, 1996 bombing attack at the Khobar Towers in Dhahran, Saudi Arabia.

24. Hizballah, acting as an agent of the Islamic Republic of Iran and of IRGC, performed acts within the scope of its agency, within the meaning of 28 U.S.C. § 1605A, that caused the injuries to the Plaintiffs herein.

### III. STATEMENT OF FACTS

25. Several years before the terrorist attack at issue here, the Islamic Republic of Iran began a program of carefully planned acts of terrorism designed to destabilize governments in the Middle East and to export Islamic fundamentalism. Its principal agents, political subdivisions, and arms in this regard were the Iranian Ministry of Information and Security ("MOIS") and the IRGC.

26. In the early 1980's Iran, through MOIS and the IRGC, established Hizballah in Lebanon as a terrorist organization employing tactics such as kidnapping, torture and murder. The MOIS and the IRGC provided funding, training, and equipment to Hizballah enabling it to pursue and achieve its terrorist mission. By the early 1990's, the activities of Hizballah were no longer limited to Lebanon. Its operatives were operating in a number of countries utilizing the tactics taught to them in Iran and the Bekaa Valley in Lebanon at facilities established, operated and supported by Iran.

27. In this period, the presence of United States personnel in Saudi Arabia was viewed by the Iranian government as supportive of a Saudi monarchy, which was closely allied with Western governments. In Iran's view, a large-scale terrorist operation designed to kill Americans would expose the corruption of the house of Al-Saud and result in a revolution and the establishment of an Islamic Republic in Saudi Arabia. In 1995, Iran, acting through MOIS, IRGC, Hizballah, and Osama bin Laden, began preparations for a bombing of a target associated with

American interests. Hizballah operatives began scouting potential Arabian targets. With Iran's support, small shipments of explosives were smuggled into Saudi Arabia and stored. And an elaborate professional intelligence network was established to carry out the mission.

28. By June 1996, the bomb components had arrived in Saudi Arabia, including high explosives, incendiary materials, and sophisticated fuses as well as the tools for the bomb assembly. Iran selected and approved a target in Dhahran to be detonated by Hizballah agents.

29. On the evening of June 25, 1996, two Hizballah terrorists drove a stolen Mercedes Benz tanker truck containing the bomb into the Saudi compound that surrounded the American sector at the al-Khobar military area near Dhahran. They parked the truck 80-100 feet from a building which housed the American personnel. The men drove away in a waiting getaway vehicle. A few minutes later, the bomb exploded. The explosion killed dozens of persons including nineteen American servicemen. Hundreds of others suffered personal injury and great emotional distress as a result of the terrorist explosion. For most, the psychological wounds continue to this day.

30. Wanda Kelly Johnson, who was present at the time suffered personal injury and great emotional distress as a result of the terrorist explosion. Her physical and emotional wounds remained with her until her death in 2021.

31. Wanda's family – the Plaintiffs herein -- heard about the bombing on the news or from each other. Each of Wanda's relatives herein was terrified that Wanda may have been killed. For several painful days they were unable to contact Wanda or even confirm that she had survived the attack. This lack of information caused each of Wanda's immediate family members great shock, anxiety, and distress at the time of the attack and in the years that followed.

32. Finally, approximately one week after the attack, Sarah Kelly, Wanda's sister spoke with Wanda on the phone. It was clear to Sarah that Wanda had been severely traumatized. Wanda told Sarah that during the attack, she thought she was going to die.

33. The Khobar Towers bombing caused Wanda's life to spiral out of control. She suffered terribly as a result of her physical and emotional injuries inflicted by the bombing. Wanda suffered severe emotional injuries, including post-traumatic stress disorder ("PTSD"), bipolar disorder, depression, anxiety, and schizophrenia. As a result of her emotional injuries, Wanda became an alcoholic.

34. Ari Foster was only seven years old at the time of the bombing. When Wanda returned from Saudi Arabia, Ari noticed that her mother's behavior had changed dramatically. Wanda was emotionally detached and cold towards her daughter. She was unable to empathize or to provide Ari with emotional support. Wanda became paranoid and engaged in emotionally abusive behavior, including telling Ari that she wished Ari had never been born.

35. Prior to the attack Wanda was extremely close with her family. Sarah Kelly, Wanda's sister says Wanda had always been *her* "best friend." Sarah says their father, Clarence Kelly, was *Wanda's* "best friend." Wanda was also unusually close with her mother.

36. Following the attack each of Wanda's relatives remained close with her and tried to provide her with emotional support. But they noticed that she had changed. She had trouble talking about her experience in the bombing. Wanda was often very short-tempered and angry with her family. She behaved erratically and in self-destructive ways. She would often threaten to commit suicide. Each of her close relatives witnessed these behaviors and suffered severe emotional distress as a result.

37. Wanda would call her parents at all times of the night, crying due to her emotional pain. This caused her parents untold distress, which they lived with until their deaths.

38. Sarah Kelly felt like she lost her sister *and* her best friend. Wanda opened up to Sarah more than to anyone else (with the exception of her father). And Sarah stood by Wanda's side throughout her suffering, and suffered with her.

39. Andra Kelly confirms that the Khobar Towers bombing caused his sister's life to spiral out of control and caused his close relationship with her to unravel. Andra Kelly says that when Wanda returned home from Saudi Arabia, "she wasn't herself." Andra struggled to maintain a relationship with the person Wanda had become.

40. As children, Wanda's younger brother, DeMarco Kelly, looked up to Wanda, and sought her guidance and advice. When Wanda returned to the United States after the bombing, DeMarco felt helpless as Wanda increasingly engaged in alcohol abuse and aggressive and self-destructive behavior. DeMarco had great difficulty coping with the "loss" of the older sister he knew before the attack, and was distraught because of Wanda's continuing suffering.

41. Wanda and her immediate family members each suffered severe injury, including pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

## COUNT I
## CAUSE OF ACTION FOR DAMAGES
## UNDER 28 U.S.C. SECTION 1605A(c)

42. Plaintiff repeats and incorporates the allegations above as though fully set forth herein.

43. Defendant provided material support and resources to Hizballah, within the meaning of 28 U.S.C. Section 1605A(a), which caused, enabled, and facilitated the terrorist attack at the Khobar Towers.

44. That terrorist attack, which resulted in nineteen deaths, was an extrajudicial killing within the meaning of Section 1605A and caused great personal injury and damage to many others including the Plaintiffs herein.

45. Iran's agencies, instrumentalities, officials, and other agents provided the material support and resources that caused and facilitated the terrorist bombing and conspired with Hizballah to carry out the terrorist bombing, all within the scope of their agency, office, or employment.

46. Hizballah is, and was at all relevant times, an agent of Iran. It carried out the terrorist bombing while acting within the scope of its agency.

47. Plaintiffs herein were injured in the attack or are immediate family members of those injured in the attack. The terrorist bombing caused the Plaintiffs to suffer severe harm, including personal injury, mental anguish, pain and suffering, severe emotional distress, loss of companionship and society, loss of consortium, and pecuniary loss.

48. The terrorist bombing and the harm and injuries suffered by the Plaintiffs were directly and proximately caused by Iran's conduct described herein.

49. The conduct of Iran was criminal in nature, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages under 28 U.S.C. Section 1605A(c).

50. Iran is therefore liable for the full amount of Plaintiff's' damages and for punitive damages under 28 U.S.C. 1605A(c), jointly and severally.

## COUNT II
## ASSAULT
## UNDER 28 U.S.C. SECTION 1605A(c)
### (Plaintiff Estate of Wanda Kelly Johnson)

51. Plaintiffs reallege and incorporate the allegations above as though fully set forth herein.

52. The attack caused Wanda Kelly Johnson, imminent fear and apprehension of physical harm and death, and constituted an assault on her person.

53. The attack and the assault on her person, which were direct and proximate results of Iran's actions, caused Wanda Kelly Johnson, extreme fear, and profound mental anguish and trauma.

54. Iran is therefore liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

55. Iran's conduct was criminal, outrageous, extreme, willful, malicious, and a threat to the public, warranting an award of punitive damages.

56. The Estate of Wanda Kelly Johnson is entitled to compensatory and punitive damages in amounts to be ascertained at trial and including reasonable attorney's fees and court costs.

## COUNT III
## BATTERY
## UNDER 28 U.S.C. SECTION 1605A(c)
### (Plaintiff Estate of Wanda Kelly Johnson)

57. Plaintiffs reallege and incorporate the allegations above as though fully set forth herein.

58. The attack was an intentional act that caused harmful bodily contact to Wanda Kelly Johnson.

59. The harmful bodily contact to Wanda Kelly Johnson was made without her consent and therefore constituted a battery on her person.

60. Iran's actions were willful, malicious, intentional, reckless, unlawful and were the proximate cause of the attack and the battery on the person of Wanda Kelly Johnson.

61. Iran is therefore liable for the full amount of Wanda Kelly Johnson's damages, in such sums as may hereinafter be determined.

62. Iran's conduct was criminal, outrageous, extreme, willful, malicious, and a threat to the public, warranting an award of punitive damages.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## UNDER 28 U.S.C. SECTION 1605A(c)

63. Plaintiffs reallege and incorporate the allegations above as though fully set forth herein.

64. Iran conspired with Hizballah to carry out the terrorist bombing.

65. Defendant Iran's conduct and that of its agents and co-conspirators alleged herein was deliberate or reckless and Iran intended or knew or should have known that its conduct would likely cause emotional distress. Iran's conduct terrorized the victims, and their families, including the Plaintiffs.

66. Iran's conduct and that of its agents and co-conspirators was outrageous and went beyond all bounds of decency and is regarded as atrocious and utterly intolerable in civilized society.

67. Iran's conduct and that of its agents and co-conspirators caused Plaintiffs to suffer severe emotional distress.

68. Plaintiffs are entitled to compensatory and punitive damages in amounts to be ascertained at trial and including reasonable attorney's fees and court costs.

## COUNT V

### SOLATIUM, PAIN AND SUFFERING AND LOSS OF CONSORTIUM UNDER 28 U.S.C. SECTION 1605A(c)

69. Plaintiffs reallege and incorporate by reference all allegations above as if fully set forth herein.

70. As a direct and proximate result of the Defendant's and its agent, Hizballah's, willful, wrongful, intentional, and reckless acts, Plaintiffs were deprived of the assistance, society and companionship of their family member, Wanda Kelly, for extended periods of time and for many years following the attack. Plaintiffs suffered severe emotional distress and mental anguish as a result of the injuries to Wanda and as a result of being deprived of her companionship.

71. As a result, all plaintiffs herein are entitled to compensatory and punitive damages for solatium and/or loss of consortium under applicable law in an amount to be determined at trial and including reasonable attorney's fees and court costs.

## COUNT VI

### CIVIL CONSPIRACY UNDER 28 U.S.C. SECTION 1605A(c)

72. Plaintiffs reallege and incorporate the allegations above as though fully set forth herein.

73. Iran knowingly and willingly conspired, agreed and acted in concert with Hizballah in a common plan and design to facilitate and cause acts of international terrorism, extrajudicial killing and personal injury including the attack herein.

74. As a result of the attack caused, resulting from, and facilitated by Iran's conspiracy with Hizballah, the plaintiffs suffered the damages enumerated herein.

75. Iran is therefore liable for the full amount of Plaintiffs' damages, in such sums as may hereinafter be determined.

## COUNT VII
## AIDING AND ABETTING
## UNDER 28 U.S.C. SECTION 1605A(c)

76. Plaintiffs reallege and incorporate the allegations above as though fully set forth herein.

77. Iran provided Hizballah with material support and resources within the meaning of 28 U.S.C. §1605A, and other substantial aid and assistance, in order to aid, abet, facilitate and cause the commission of acts of international terrorism, extrajudicial killing and personal injury including the bombing herein.

78. As a result of the bombing caused, resulting from and facilitated by Iran's provision of material support and resources to, and other acts of aiding and abetting, Hizballah, the Plaintiffs suffered the damages enumerated herein.

79. Iran is therefore liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

## COUNT VIII
## PUNITIVE DAMAGES
## UNDER 28 U.S.C. SECTION 1605A(c)

80. Plaintiffs reallege and incorporate by reference all allegations above as if fully set forth herein.

81. The actions of Defendant acting in concert with IRGC and Hizballah to carry out their unlawful objectives were malicious and willful, wanton, and reckless in their disregard for

human life and limb, and caused severe injuries to Plaintiffs and untold pain and suffering to those Plaintiffs who were the immediate family members of Wanda Kelly.

82. The actions of Hizballah were undertaken at such time as they were operating for and in the service of Defendant Iran and the IRGC, and in concert with them, and which are therefore both vicariously and directly liable to Plaintiffs.

83. For the reasons stated above, Defendant Iran is liable to Plaintiffs for punitive damages. Plaintiffs demand an award of punitive damages against defendant in an amount to be determined by the Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that the Court grant judgment in theirs favor and against Defendant Iran and grant Plaintiffs:

A. Compensatory damages as against Defendant in amounts to be determined by the Court;

B. Punitive Damages in favor of Plaintiffs as against Defendant in an amount to be determined by the Court;

C. Prejudgment interest from the date of the attack through the date a judgment is entered;

C. Reasonable costs and expenses;

D. Reasonable attorneys' fees; and

E. Such other and further relief as the Court may determine to be just and equitable in the circumstances.

Dated: June 11, 2023         Respectfully submitted,

By  /s/ Asher Perlin
Asher Perlin (#FL0006)
Law Office of Asher Perlin
4600 Sheridan Street, Suite 303
Hollywood, Florida 33021
Tel: (786) 687-0404
asher@asherpelin.com
*Counsel for Plaintiffs*